# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GLENN R. MILLER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-4264** |
| | : | |
| **GEORGE LITTLE,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**SCHMEHL, J.**      **/s/ JLS**                                      **MAY 25, 2023**

*Pro se* Plaintiff George M. Miller, an inmate at SCI Phoenix, filed this civil rights action

pursuant to 42 U.S.C. § 1983.  Miller asserts Eighth Amendment claims related to injuries he

sustained while repairing a prison laundry machine.  He names sixteen Defendants associated

with the Pennsylvania Department of Corrections ("DOC") and three Defendants associated with

Wellpath Holdings, LLC, the medical contractor for the DOC.  Miller sues all Defendants in

their individual and official capacities.  For the following reasons, the Court will dismiss Miller's

Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C.

§ 1915A(b)(1).[1]  Because some of Miller's claims will be dismissed without prejudice, he will be

granted the option of filing an amended complaint to attempt to cure the defects discussed below

or proceeding only the claims that the Court concludes pass statutory screening.

---

[1] Miller initiated this action by filing a one-page letter.  (ECF No. 1.)  Although the letter
was deficient as a formal complaint in several respects, the Clerk of Court treated the letter as a
complaint and opened this civil action.  In an October 22, 2022 Order, the Court directed Miller
to file a proper complaint that complies with the Federal Rules of Civil Procedure.  (ECF No 3.)
Miller returned with a proper Complaint at ECF No. 6.  Although it is docketed as an "amended
complaint," the Court treats it as Miller's initial Complaint and will refer to it as "Complaint"
throughout this Memorandum.

## I.   FACTUAL ALLEGATIONS[2]

Miller's allegations center on an accident to his left index finger and the alleged lack of

medical care he received for that injury.[3]  Specifically, on February 11, 2020, Miller was

working in SCI Phoenix's Correctional Industries ("CI") Laundry Department.[4]  (Compl. at 16,

17, 19, ECF No. 6.)  He worked as an "inmate preventative maintenance mechanic" on the CI

_____

[2] The facts set forth in this Memorandum are taken from Miller's Complaint, which consists of the Court's form complaint available to prisoners to raise constitutional claims and a typewritten portion.  The Court will deem the entire submission to constitute the Complaint, and adopt the continuous pagination assigned to the Complaint by the CM/ECF docketing system.

[3] Miller names the following Defendants:  (1) George Little, Secretary of PA DOC; (2) Kevin Sorber, SCI Phoenix Superintendent; (3) D.A. Bradley, Deputy Superintendent for Internal Security; (4) Mandy Bisser Sipple, Deputy Superintendent for Centralized Services; (5) Bernard Panasiewicz, Deputy Superintendent for Facility Management; (6) Gina Clark, Major of the Guard, Unit Management; (7) David Mascellino, Security Captain; (8) Etta Williams, Day Captain; (9) Omar Nunez, Unit Manager; (10) Pamela Jaques, Corrections Counselor; (11) Henry Hause, Correctional Industries Laundry Supervisor; (12) Paul Evans, Correctional Industries Laundry Foreman; (13) Joseph Pucci, Correctional Industries Laundry Supervisor; (14) Luis Quintana, Correctional Industries Laundry Foreman; (15) Brittany Huner, Correctional Health Care Administrator; (16) WellPath, Holdings LLC; (17) Dr. Gordon, M.D.; (18) Dr. Anthony Letizio II M.D.; and (19) the DOC.  (Compl. at 8-12.)  Although he did not specifically include the DOC in the caption of his Complaint, the Court understands Miller to be naming the DOC as a Defendant based on the many allegations Miller asserts against the DOC.  Miller asserts claims against all Defendants in their official and individual capacities.

[4] The Court will not consider the timeliness of Miller's claims at this time.  Generally, Miller's claims are subject to a two-year statute of limitations.  *See* 42 Pa. Const. Ann. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  However, pursuant to the Prison Litigation Reform Act ("PLRA"), prisoners seeking to challenge the conditions of their confinement, like Williams is here, must exhaust all available administrative remedies before bringing a lawsuit.  42 U.S.C. § 1997e(a).  "The [Pennsylvania Department of Corrections] has a grievance policy involving a three-step process that an inmate must fully complete in order to properly exhaust his administrative remedies under the PLRA."  *Jackson v. Carter*, 813 F. App'x 820, 823 (3d Cir. 2020) (*per curiam*).  Briefly, an inmate must file an initial written grievance, appeal to the facility manager, and file a final written appeal to the Secretary's Office of Inmate Grievances and Appeal.  *Id.*; *see also Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 151 (3d Cir. 2016) (describing DOC grievance process in more detail).  "[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies."  *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015).  Miller's grievances and appeals appear to have begun shortly after his accident in February 2020 and continued until December 2022.  (*See* Compl. at 47-49.)

laundry machines.  (*Id*. at 19.)  Miller requested tools and equipment from Defendant Paul

Evans, including a tool cart, a pass key to unlock the service panels on the laundry machines, and

a manual lockout bypass key, which allows the machine to operate uninterrupted while the

service panel is open.  (*Id*.)  When Miller also requested a pair of "mechanics oil resistant

gloves," he was told by Evans that Defendant Henry Hause, the Laundry Supervisor, had the

keys but was not there that day.  (*Id*.)  Evans gave Miller black nitrile surgical gloves to use

instead.  (*Id*.)  Miller also requested an air hose and nozzle wand to remove the dust and dirt

from the laundry machines.  (*Id*.)  Evans allegedly denied this request, stating that the air hose

makes too much noise.  (*Id*.)  When Miller suggested that the inmates be provided with ear plugs

for the noise, Evans again refused, stating that he did not have the keys to access the ear plugs.

(*Id*.)  Instead, Evans gave Miller scraps of t-shirt that were meant to be used as rags.  (*Id*.)  Evans

told Miller to use the rags to remove the dust and dirt from the machinery.  (*Id*.)

Miller asked two inmate coworkers to stand in front of the towel folding machine while

he serviced it.  (*Id*.)  He inserted the "manual lockout bypass key" and turned the machine on.

(*Id*.)  After putting on the black nitrile surgical gloves, he used the rag scraps – both provided by

Evans – to clean "the horizontal drive chain until it was free of all dirt, lint, and oil."  (*Id*.)  While

using a rag to clean the "small vertical secondary chain" of "all dirt, lint, and oil," the rag got

caught in the chain causing Miller's left hand to be pulled towards the sprocket assembly and his

index finger to be "chopped off."  (*Id*. at 20.)  While pulling himself free from the machine,

Miller also injured his right shoulder.  (*Id*.)  Miller asked inmate coworkers to find a correctional

officer or a CI Laundry staff member.  (*Id*.)  Within minutes, Defendants Luis Quintana and

Evans, two CI laundry foreman arrived.  (*Id*.)  A third CI laundry foreman referred to in the

Complaint as "Mr. Holahan" also arrived to assist.[5]  (*Id*.)  Miller was sent to the nurse triage unit at SCI Phoenix.  (*Id*.)  When the nurse asked for Miller's partially-severed finger, Holahan left to retrieve it.  (*Id*.)  Medical personnel applied a tourniquet to and bandaged Miller's left arm, and sent him for x-rays.  (*Id*.)  Defendant Etta Williams, the Shift Commander Captain requested that the medical staff take several digital photographs of Miller's hand.  (*Id*.)

Miller alleges that medical personnel at the triage unit initiated his transport to an outside hospital.  (*Id*.)  However, the transport was allegedly delayed because the escort officers had to wait for Holahan to return with the partially-severed finger.  (*Id*.)  When he arrived, the partially-severed finger was still in the black nitrile surgical glove and was not placed on ice.  (*Id*.)  When Miller arrived at the hospital, the emergency trauma physician said that the severed finger should have been placed on ice.  (*Id*.)  The physician advised Miller that he could not reattach his finger, which left Miller with a stump on his left index finger.  (*Id*.)  Miller was returned to the prison with prescriptions and instruction on how to care for the open wound.  (*Id*.)

Miller was scheduled for physical therapy to treat his finger on March 13, 2020, but alleges that prison staff refused to take him to the appointment.  (*Id*. at 21.)  He did not attend physical therapy for his finger until 18 months later.  (*Id*.)  On March 17, 2020, his finger became "seriously infected."  (*Id*.)  Defendant Dr. Gordon, who is alleged to be employed by Wellpath, ordered a splint for the infected finger.  (*Id*. at 12, 21.)  Miller alleges that "[i]mmobilizing [his] amputated index finger with a splint was counter-productive to physical therapy" and "contrary to rehabilitation practices," which "raise[d] the question of medical practice" on the part of Dr. Gordon.  (*Id*. at 21.)  In May of 2021, Miller injured his left hand, including the little finger on his left hand, when he tried to pull himself up to the top bunk of his

---

[5] Holahan is not named as a Defendant.

4

prison bed. (*Id*. at 22.)  Miller alleges that he had been medically designated to be placed in the bottom bunk but that prison officials never gave him a bottom bunk assignment "due to a communication breakdown between the Medical Department and the Unit Management Team." (*Id*.)  Miller was also medically approved for an electric shaver on March 2, 2020 and again on August 16, 2021 due to his hand injury.  (*Id*.)  However, Miller was not issued a shaver until April 21, 2022, despite his numerous requests to different prison staff members.  (*Id*.)

On November 1, 2021, Miller met with Dr. Williamson,[6] who advised him that the 18-month delay of physical therapy and the "long period of inactivity had caused a calcium build up . . . and a weakening of ligaments" which explained why Miller was not able to bend his finger. (*Id*.)  Dr. Williamson recommended two to three weeks of physical therapy and "corrective surgery" if the therapy did not help restore Miller's ability to move his finger.  (*Id*.)  Miller alleges that the physical therapy did not work to restore movement and that he has requested the corrective surgery.  (*Id*.)  Dr. Williamson performed surgery on Miller's left hand and left little finger on December 13, 2021.  (*Id*.)  His post-op appointment with Dr. Williamson, which was supposed to be in January 2022, had not yet been scheduled by the DOC or Wellpath when Miller filed his Complaint, despite requests by Miller.  (*Id*.)

Attached to Miller's Complaint are over 160 documents comprising of grievances submitted by Miller and responses to those grievances.  (*See id*. at 36-201.)  Miller briefly summarizes his grievances and the responses in his Complaint.  (*Id*. at 26-28.)  Based on these allegations, Miller seeks over five million dollars of compensatory and punitive damages.  (*Id*. at 23.)

---

[6] The Court understands that Dr. Williamson is an outside medical provider and not employed by Wellpath or associated with SCI Phoenix.  Dr. Williamson is not named as a Defendant.

## II.    STANDARD OF REVIEW

Although Miller has paid the filing fee in full,[7] the Court has the authority to screen his

Complaint pursuant to 28 U.S.C. § 1915A.  *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir.

2000) (recognizing that the district courts have the authority to screen a prisoner complaint

pursuant to § 1915A(b)(1) even if the prisoner is not proceeding in forma pauperis.  Section

1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as

practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a

governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In

doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious,

or fails to state a claim upon which relief may be granted," *id*. § 1915A(b)(1), or that "seeks

monetary relief from a defendant who is immune from such relief," *id*. § 1915A(b)(2).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same

standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See*

*Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19,

1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  Accordingly, the

Court must determine whether the complaint contains "sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts

alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's]

favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to

state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting

---

[7] After initiating this action, Miller requested leave to proceed *in forma pauperis*.  (*See* ECF No. 4.)  On January 9, 2023, the Court entered an Order denying Miller's Motion because he had sufficient funds to pay the filing and administrative fees.  (*See* ECF No. 7.)  Miller subsequently paid the fees to commence this civil action.  (*See* ECF No. 8.)

*Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Miller is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

Miller asserts Eighth Amendment deliberate indifference claims under 42 U.S.C. § 1983. He also asserts claims under Title II of the Americans with Disabilities Act ("ADA").  Liberally construing Miller's Complaint, it is possible he also intends to assert claims for negligence against Defendants and claims for medical malpractice against the individual Wellpath Defendants.

### A.   Eighth Amendment Claims under 42 U.S.C. § 1983

Miller's Eighth Amendment deliberate indifference claims are analyzed under § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a §1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

#### 1.   Named Defendants with No Allegations

There are nineteen Defendants in this civil action.  Miller fails to allege any factual allegations against twelve of them:  George Little; Kevin Sorber; D.A. Bradly, Mandy Bisser

Sipple; Bernard Panasiewicz; Gina Clark; David Mascellino; Omar Nunez; Pamela Jaques; Joseph Pucci; Brittany Huber; and Dr. Anthony Letizio II, M.D.  Because there are no allegations that these Defendants had personal involvement in conduct that violated Miller's civil rights, *see Rode*, 845 F.2d at 1207, these Defendants will be dismissed without prejudice.

To the extent that Miller relied on the over 160 pages of exhibits that he attaches to his Complaint to support claims against these Defendants, he has failed to meet the pleading requirements.  *See Berkery v. Credit Collection Servs.*, No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021) ("While a court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." ).  Miller must specifically articulate in his Complaint how each Defendant was personally involved in the alleged violation of his rights.

In addition, to the extent that Miller brings claims against any Defendant based solely on their involvement in denying his grievances, such claims are not viable.  This is because participation in the grievance process does not, without more, establish involvement in the underlying constitutional violation.  *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants . . . who participated only in the denial of [the plaintiff]'s grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of [the plaintiff]'s prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").  Finally, to the extent Miller named certain Defendants simply because they are high level officials, this is also not

sufficient to state a plausible claim. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation).

### 2.      Claims against the DOC

The DOC is an agency of the Commonwealth of Pennsylvania. The Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, *id*., and the Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b). Since the DOC is an agency of the Commonwealth of Pennsylvania, it is entitled to Eleventh Amendment immunity and is not a "person" for purposes of § 1983. *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983); *see also Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (*per curiam*) ("[A]s a state agency and the prison it administers, the Department of Corrections and SCI-Albion are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983."). The Court will therefore dismiss the § 1983 claims against the DOC with prejudice.

### 3.      Official Capacity Claims against Individual DOC Defendants

Miller names all DOC Defendants in their official and individual capacities.[8] Official capacity claims are indistinguishable from claims against the governmental entity that employs

---

[8] The individually-named DOC Defendants include George Little, Kevin Sorber, D.A. Bradley, Mandy Bisser Sipple, Bernard Panasiewicz, Gina Clark, David Mascellino, Etta

the Defendants, here the DOC.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)

("Official-capacity suits . . . 'generally represent only another way of pleading an action against

an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs*., 436

U.S. 658, 690, n. 55 (1978)).  Thus, § 1983 claims against the individual defendants here—all of

whom are employed by the DOC—are really claims against the DOC, who is shielded from

§ 1983 suits by Eleventh Amendment immunity.  *See* supra § III.A.2; *see also Downey v.*

*Pennsylvania Dep't of Corr*., 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment

immunity bars actions for retroactive relief against state officers acting in their official

capacity.").  Accordingly, all claims asserted against the DOC Defendants in their official

capacity are dismissed with prejudice.

### 4. Claims against Wellpath and Related Official Capacity Claims against Wellpath Employees Drs. Gordon and Letizio

Miller also names as a Defendant Wellpath, a private company that contracts with SCI

Phoenix to provide medical care to inmates, as well as two Wellpath employees, Dr. Gordon and

Dr. Letizio.  Miller asserts claims against the Wellpath Defendants in their official and individual

capacities.  Official capacity claims against Wellpath employees are really duplicate claims

against Wellpath.  *See Graham*, 473 U.S. at 165-66.  A private corporation such as Wellpath,

which is under contract to provide prison health services, may be liable under § 1983 only if that

entity's policies or customs caused the alleged constitutional violation.  *See Monell v. N.Y.C.*

*Dept. of Soc. Servs*., 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d

575, 583-84 (3d Cir. 2003).  For such a claim to be plausible, the plaintiff "must identify [the]

---

Williams, Omar Nunez, Pamela Jaques, Henry Hause, Paul Evans, Joseph Pucci, Luis Quintana, and Brittany Huner.

custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

A plaintiff may also state a plausible basis for liability against an entity like Wellpath by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc*., 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cnty*., 789 F. App'x 313 (3d Cir. 2019).  Only in the narrowest of circumstances can a failure to train or supervise "said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Id*. (quoting *Thomas v. Cumberland Cnty*., 749 F.3d 217, 223 (3d Cir. 2014) (internal citation and quotation marks omitted).  Miller does not tie any of the claimed violations of his constitutional rights to a Wellpath policy or custom or to Wellpath's failure to train, supervise, or discipline its staff.  Accordingly, the Complaint does not state a claim against Wellpath or Wellpath employees in their official capacities.  The official capacity claims against Wellpath will be dismissed without prejudice.  The official capacity claims against the Wellpath employees will be dismissed with prejudice as duplicative.

### 5. Claims against Evans, Hause, and Quintana

Miller asserts individual capacity claims against Evans, Hause, and Quintana based on their involvement in his accident servicing the towel folding machine on February 11, 2020.  The Court understands Miller to be asserting Eighth Amendment claims against Evans, Hause, and

Quintana based on the conditions of his confinement.  "To determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test:  (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'"  *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Such necessities include food, clothing, shelter, medical care, and reasonable safety.  *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).  However, a claim based on negligence is insufficient to allege a claim under § 1983.  *See Farmer*, 511 U.S. at 835; *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) ("Here, the allegations contained in the amended complaint, taken as true, assert a simple negligence claim at most, and thus do not state a claim of a constitutional violation under the Eighth Amendment.").

Miller alleges that Evans "directed him to override the safety features" of the laundry machines.  (Compl. at 16.)  Evans allegedly refused to provide Miller with the air hose and nozzle wand because it would be too loud and instead provided Miller with t-shirt scraps as rags and directed him to use the rags to clean the chains of the laundry machines.  Evans also refused to provide Miller with mechanics oil resistant gloves because Defendant Hause, who was not present, had the key.  Based on these allegations, Miller has stated a plausible Eighth Amendment claim against Evans.  This claim passes statutory screening and will be served for a responsive pleading.

Miller has not, however, stated plausible Eighth Amendment claims against Hause or Quintana.  The only allegations against Hause are that he was not present on the day of the

accident and therefore could not provide the keys to Evans to access the requested mechanics oil resistant gloves.  The only allegation against Quintana was that he arrived at the scene of Miller's accident after it occurred.  These facts do not raise a plausible inference that either Defendant was deliberately indifferent to Miller's safety.   It is not clear how either was involved in the alleged violations of Miller's constitutional rights.  *See Rode*, 845 F.2d at 1207.  Neither were alleged to be present when the injury occurred or were otherwise involved in the decisions that were alleged to have caused the injury.  Accordingly, the Eighth Amendment claims against Hause and Quintana will be dismissed without prejudice.

### 6.     Claim against Dr. Gordon

Miller asserts a deliberate indifference claim against Dr. Gordon based on his treatment of Miller's index finger after it became infected.  To state a constitutional claim based on the failure to provide adequate medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer*, 511 U.S. at 835; *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).  As noted, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or

recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Allegations of medical malpractice and mere disagreement regarding proper medical treatment

are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d

Cir. 2004).

      Miller alleges that he saw Wellpath provider Dr. Gordon after his index finger became

infected on March 17, 2020.  Dr. Gordon ordered a splint for Miller, which Miller alleges was

"contrary to rehabilitation practices" and "counter-productive to physical therapy."  (Compl. at

21.)  These allegations do not raise a plausible inference of deliberate indifference.  Miller

essentially alleges that the care of his finger should have been handled differently by Dr. Gordon.

However, a difference of opinion as to the proper medical care does not constitute deliberate

indifference.  *See Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (*per curiam*)

(stating that allegations of negligent diagnosing and treatment, and mere disagreement as to

proper medical treatment do not raise a constitutional claim); *Smith v. O'Boyle*, 251 F. App'x 87,

90 (3d Cir. 2007) (affirming dismissal of a complaint, "[b]ecause a disagreement as to the proper

medical treatment for a prisoner is insufficient to establish an Eighth Amendment violation").

When prisoners receive some medical treatment and a dispute arises "over the adequacy of

treatment," district courts should not "second guess medical judgments and . . . constitutionalize

claims which sound in state tort law."  *U. S. ex rel. Walker v. Fayette Cty., Pa*., 599 F.2d 573,

575 n.2 (3d Cir. 1979) (citation omitted).  Even if it could be argued that Dr. Gordon was

negligent in ordering the splint, negligence is not enough to allege a constitutional claim.  *See*

*Rouse*, 182 F.3d at 197 ("It is well-settled that claims of negligence or medical malpractice,

without some more culpable state of mind, do not constitute 'deliberate indifference.'").

Accordingly, Miller's § 1983 claim against Dr. Gordon will be dismissed without prejudice.

### 7.      Claim against Williams

Miller also appears to assert an Eighth Amendment claim against Williams, who is an alleged "Day Captain." (Compl. at 9.) The only allegations Miller makes against Williams is that she ordered that photographs be taken of Miller's hand and finger after he was sent to the nurse triage unit at SCI Phoenix. The alleged basis for a constitutional violation is not clear to the Court. To the extent that Miller alleges that Williams, by ordering that photographs be taken, caused a delay in his medical care, the allegations fail to state a claim. In particular, the Complaint contains no facts about the length of the delay caused by Williams, the reason for the pictures, and whether the delay caused further harm to Miller.

To the extent Miller alleges a claim against Williams in her supervisory capacity, he has also failed to state a plausible claim. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id*. (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*. Williams is mentioned only once in the Complaint. Allegations that Williams ordered photographs to be taken of Miller's injuries do not raise a plausible inference of deliberate indifference. Accordingly, the claims against Williams will be dismissed without prejudice.

### 8.   Claims based on Denial of Medical Treatment, Bottom Bunk, and Electric Shaver

Miller alleges that he was denied physical therapy for eighteen months and that this delay in receiving treatment worsened the conditions of his hand and finger and caused him to not be able to bend his finger.  He also alleges that he was denied medical follow-up appointments and denied his "corrective surgery" to his left index finger.  Miller also alleges that on account of his injury, he was designated to receive a lower bunk and an electric shaver but that he never received a bottom bunk and only received the electric shaver after over a year of requests to different staff members.  The Court understands Miller to be raising deliberate indifference claims under the Eighth Amendment.  As noted above, a plaintiff may state an Eighth Amendment deliberate indifference claim for the denial of medical care if a defendant intentionally refuses to provide a prisoner's known need for medical treatment, delays that medical treatment based on a non-medical reason, or prevents the prisoner from receiving the recommended treatment.  *Rouse*, 182 F.3d at 197.  Although Miller may be able to assert plausible Eighth Amendment claims based on the alleged denial of physical therapy, medical appointments, corrective surgery, a bottom bunk assignment, and an electric shaver, he has failed to allege facts tying any named Defendant to these alleged deprivations.  *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."); *see also Iqbal*, 556 U.S. at 676 (explaining that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Moreover, he cannot rely on exhibits attached to his Complaint and the allegations contained therein to allege the essential elements of his claims.  Accordingly, any deliberate indifference claims based on the alleged denial of physical therapy, medical

appointments, corrective surgery, a bottom bunk, or an electric shaver will be dismissed without prejudice.

**B.     ADA Claims**

Miller alleges claims against all Defendants under Title II of the ADA related to Defendants' failure to provide him a bottom bunk and an electric shaver.[9]  Title II of the ADA, which prohibits "a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that individual's disability, covers inmates in state prisons." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998) (quoting 42 U.S.C. §§ 12131 & 12132) (internal quotations omitted).  Although the United States Court of Appeal for the Third Circuit has not addressed the issue precedentially, most courts "have held that Title II does not authorize suits against government officers in their individual capacities." *Williams v. Hayman*, 657 F. Supp. 2d 488, 502 (D.N.J. 2008); *see also Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim.").  Accordingly, Miller's individual capacity ADA claims against the individually-named DOC and Wellpath Defendants must be dismissed with prejudice.

---

[9]  Section 202 of the ADA provides:

Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Generally, the proper defendant for a Title II ADA claim is the public entity or an individual who controls or directs the functioning of the public entity, here the DOC. *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002). Miller also names Wellpath. However, Wellpath is a private company that contracts with the prison and therefore it and its employees are not considered public entities subject to suit under Title II of the ADA. *See Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015) (affirming dismissal of ADA claims against Corizon and Corizon employees because in the context of the ADA, "a private corporation is not a public entity merely because it contracts with a public entity to provide some services"); *Freeman v. McDonnell*, No. 18-7802, 2021 WL 395875, at *5 (D.N.J. Feb. 4, 2021) (dismissing claims under Title II of the ADA against Wellpath and Wellpath employees because Wellpath is a private company and thus not a "public entity" subject to Title II). Accordingly, all ADA claims against Wellpath, Dr. Gordon, and Dr. Letizio will be dismissed with prejudice.

Moreover, the official capacity ADA claims asserted against the individual DOC Defendants must also be dismissed. Because ADA claims asserted against individual prison officials named in their official capacities are really claims against the DOC, all ADA claims asserted against the individually-named DOC Defendants as duplicative of the claim against the DOC. *See Robinson v. Pennsylvania Dep't of Corr.*, No. 20-2978, 2022 WL 970760, at *4 (E.D. Pa. Mar. 31, 2022) (dismissing official capacity ADA claims against individual defendants as "duplicative" to claims against the DOC); *Dews v. Link*, No. 18-4285, 2021 WL 2223795, at *3 (E.D. Pa. June 2, 2021) ("[W]here the plaintiff simultaneously sues the state entity that employs the individual defendants, the claims against the individuals may be dismissed as duplicative of the claims against the state."). Accordingly, those claims will be dismissed with prejudice.

The Court next considers Miller's claims against the DOC.  To state a plausible claim under Title II of the ADA, a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019).  A plaintiff "may assert a failure to accommodate as an independent basis for liability under the [ADA] by alleging the accommodation he seeks is reasonable . . . i.e. that it is necessary to avoid discrimination on the basis of disability." *Snider v. Pennsylvania DOC*, No. 15-951, 2020 WL 7229817, at *18 (M.D. Pa. Dec. 8, 2020) (internal quotations and citations omitted, alteration in original); *see also Furgess*, 933 F.3d at 287 ("It is clear from the above that the PDOC knew that Furgess required a handicapped-accessible shower and that by failing to provide him with one, his right to a reasonable accommodation of his disability was likely to be violated.").

The Court understands Miller to be asserting claims that he was not provided reasonable accommodations – the bottom bunk and the electric razor – for his disability.  He alleges that he was medically designated to receive a bottom bunk in March of 2020 but despite numerous requests to prison officials, never received a bottom bunk assignment.  He also alleges that he was medically approved for an electric shaver in March of 2020 but was not issued a shaver until two years later, despite his repeated requests to prison staff members.  Miller states plausible failure to accommodate claims against the DOC.  Accordingly, Miller's claims under Title II of the ADA may proceed to service against the DOC.

### C.     State Law Claims for Negligence and Medical Malpractice

Liberally construing the Complaint, it is possible that Miller also intended to assert negligence and medical malpractice claims in connection with the injuries he allegedly sustained

servicing the prison laundry machine.  To state a claim of negligence under Pennsylvania law, a plaintiff must allege: "(1) a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another."  *Vasquez v. Wingard*, 847 F. App'x 108, 111 (3d Cir. 2021) (quoting *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1366 (3d Cir. 1993).  To state a claim for medical malpractice under Pennsylvania law, a plaintiff must allege: (1) the medical professional owed a duty to the patient; (2) the medical professional breached the duty; (3) the breach was the proximate cause of the harm suffered; and (4) the damages suffered were a direct result of the harm.  *Brown v. Hahnemann Univ. Hosp.*, 20 F. Supp. 3d 538, 542 (E.D. Pa. 2014) (citing *Hightower-Warren v. Silk*, 548 Pa. 459, 698 A.2d 52, 54 (1997).[10]

Miller has not alleged any facts to support the necessary elements for plausible negligence claims against any Defendant.  Nor has he alleged a plausible medical malpractice claim against the two medical professionals named in the Complaint.  To the extent Miller intended to pursue negligence and malpractice claims against any of the Defendants, those claims are dismissed because they are undeveloped.  However, because the Court cannot say at this time that Miller can never state plausible negligence and malpractice claims, Miller will be permitted to file an amended complaint.  The amended complaint, if he wishes to file one, must

---

[10] To the extent that Miller wishes to pursue medical malpractice claims, he should know that the Pennsylvania Rules of Civil Procedure require him to file a "certificate of merit" with respect to each defendant against which he asserts professional malpractice claim.  Rule 1042.3 of the Pennsylvania Rules of Civil Procedure requires an "attorney for the plaintiff, or the plaintiff if not represented" who brings an action based on "an allegation that a licensed professional deviated from an acceptable professional standard" to file a certificate of merit within sixty days of the filing of the complaint.

specifically identify the defendant or defendants against which he seeks to pursue these state law claims.  It must also allege facts to support the elements of the claims.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will dismiss Miller's Complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.  The following claims will be dismissed with prejudice:  (1) all § 1983 claims against the DOC; (2) the official capacity § 1983 claims against the individually-named DOC Defendants; (3) the official capacity § 1983 claims against the individually-named Wellpath Defendants; (4) the ADA Claims asserted against all Defendants with the exception of the DOC.  Miller's Eighth Amendment § 1983 claim against Defendant Paul Evans and his ADA Claim against the DOC pass statutory screening and will be served for a responsive pleading.  The balance of Miller's claims are dismissed without prejudice.  The Court will grant Miller leave to amend as to the claims dismissed without prejudice so he can "flesh out [his] allegations by . . . explaining in an amended complaint the 'who, what, where, when and why' of [his] claim."  *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019).  In the alternative, Miller may advise the Court that he seeks to proceed only on the claims that pass statutory screening.

An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

**/s/ Jeffrey L. Schmehl**

**JEFFREY L. SCHMEHL, J.**