**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GLENN R. MILLER,<br>Plaintiff,<br><br>v.<br><br>PAUL EVANS, *et al.*,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: | Civil No. 2:22-cv-04264-JLS |

## MEMORANDUM OPINION

**SCHMEHL, J. /s/ JLS** **August 6, 2026**

Plaintiff George M. Miller, an inmate at SCI Phoenix, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983. Counsel was subsequently appointed to represent Plaintiff (*see* ECF No. 38), and Plaintiff filed an Amended Complaint (ECF No. 47), asserting deliberate indifference claims in violation of his Eighth and Fourteenth Amendment rights against Defendant Miller and a claim for failure to provide reasonable accommodations in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, against Defendant Pennsylvania Department of Corrections ("DOC"). These claims arise from an accident that occurred while Mr. Miller was repairing a prison laundry machine which resulted in significant injuries, and from the DOC's alleged failure to provide him with reasonable accommodations post-injury. Defendants now move this Court to grant summary judgment on all of Plaintiff's claims.[1] For the following reasons, the Court will grant the Defendants' motion for summary judgment.

[1] Mr. Miller concedes that, because he receives the same level of protection under the Eighth Amendment, his Fourteenth Amendment claim should be dismissed. ECF No. 84, p. 1 n.1; *See Porter v. Pa. DOC*, 974 F.3d 431, 447-48 (3d Cir. 2020).

## I. BACKGROUND

Mr. Miller is currently incarcerated at the Pennsylvania State Correctional Institution – Phoenix ("SCI-Phoenix") and was incarcerated at SCI-Phoenix at all material times. ECF No. 81, Statement of Undisputed Material Facts, ¶ 1. Defendant Paul Evans was employed by the DOC as a Corrections Industry general factory foreman in the laundry facility at SCI-Phoenix. *Id*. at ¶ 2.

In August 2018, Mr. Miller was employed in the laundry facility at SCI-Phoenix as a preventative maintenance mechanic. ECF No. 81, ¶ 4. His primary responsibilities in this role included performing preventive maintenance on the laundry machinery, which consisted of inspecting the chains and sprockets for damage, lubricating the chains, and cleaning the machines' conveyors, undercarriage, and motors when needed. *Id.* at ¶ 5. Most of the tools Mr. Miller needed to complete these tasks as a preventative maintenance mechanic were stored in a tool cage, which could only be accessed by supervisors, foremen, and corrections officers. *Id.* at ¶ 6.

Mr. Miller could request several types of tools from staff to complete his tasks as a preventative maintenance mechanic, including, but not limited to: (1) hand tools; (2) a shop vacuum, which allowed him to clean machines without having to clean them by hand; (3) an air hose wand, which blew out dirt, lint, and oil from machines without having to clean them by hand; (4) drop lights, which were similar to electric flashlights; (5) oil cans and grease guns; and (6) rags. ECF No. 81, ¶ 7.

On February 11, 2020, laundry plant foremen Defendant Evans, Holahan, Quintana, and Pucci were working in the laundry facility. ECF No. 81, ¶ 8. At approximately 9:40 A.M. on February 11, 2020, while Mr. Miller was performing preventative maintenance on a towel

folding machine, his left index finger was severed. *Id.* at ¶ 9. Mr. Miller had opened the panel on the side of the towel folding machine, manually overrode the safety feature that turns off the machine when the panel is open, and used a rag to clean a chain in the machine while it was running. *Id.* at ¶ 10. The rag caught in the moving chain, and as a result, Mr. Miller's finger was severed. *Id*.

Defendant Evans was in staff office working at the time of this incident. ECF No. 81, ¶ 11. After Defendant Evans was notified of this incident, he escorted Mr. Miller to the medical department for treatment. *Id.* at ¶ 12. Once they arrived at medical, it was determined Mr. Miller severed his left index finger and the finger was still in the machine. *Id.* Mr. Miller arrived at the medical department around 9:45 A.M. and was treated by Nurse Voltz until he was transferred to Einstein Hospital for further treatment. *Id.* at ¶ 13. Unfortunately, medical staff at Einstein Hospital was unable to reattach Mr. Miller's finger. *Id.* On February 20, 2020, Mr. Miller had surgery on his left index finger with Dr. Williamson. *Id.* at ¶ 14.

On March 5, 2020, Mr. Miller requested an electric razor to shave due to his injury. ECF No. 81, ¶ 15. The medical department issued an electric razor to Mr. Miller, and he received it on April 6, 2022. *Id.* At some later point in time, all electric razors, including Mr. Miller's, were confiscated at SCI-Phoenix due to institutional security reasons. *Id.* at ¶ 16. Mr. Miller submitted an Inmate Disability Accommodation Request Form on June 22, 2023 requesting an electric razor again due to his disability pursuant to DOC policy DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities. *Id.* at ¶ 17. The Inmate Disability Accommodations Committee reviewed Mr. Miller's Disability Accommodations Request and determined that his disability was being reasonably accommodated by the institution, so no further action by the Committee was necessary. *Id.* at ¶ 18.

Mr. Miller submitted four grievances relating to the incident resulting in his injury that were processed on August 30, 2021 by the Facility Grievance Coordinator – Grievance Numbers 943310, 943307, 943305, and 943303. ECF No. 81, ¶ 19. Grievance Number 943310, regarding the incident that occurred on February 11, 2020 and the initial loss of Mr. Miller's finger, was rejected by the Facility Grievance Coordinator on August 31, 2021 due to the grievance not being submitted within fifteen working days after the events upon which claims are based. *Id.* at ¶ 20.

Mr. Miller appealed the Facility Grievance Coordinator's rejection of Grievance Number 943310 to the Facility Manager, and the Facility Manager upheld the decision and denied the appeal on September 20, 2021. ECF No. 81, ¶ 21. Mr. Miller appealed the Facility Manager's decision to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") and SOIGA dismissed the appeal on November 29, 2021. *Id.*

## II. STANDARD OF REVIEW

On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). Summary judgment is proper when there is no genuine dispute of material fact, and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. US. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

## III. ANALYSIS

### A. EIGHTH AMENDMENT CLAIM AGAINST DEFENDANT EVANS

Mr. Miller's Eighth Amendment claim against Defendant Evans arises under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

42 U.S.C. § 1983. To maintain an action under § 1983, Mr. Miller must plausibly allege a violation of a right secured by the Constitution or laws of the United States committed by a person or persons acting under color of state law, here, a violation of his Eighth Amendment rights.

Conditions of confinement violate the Eighth Amendment if (1) the alleged deprivation is, objectively, "sufficiently serious" and (2) the "prison officials acted with deliberate indifference to the inmate's health or safety." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020)

(quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A "sufficiently serious" deprivation requires (a) a serious injury, (b) a sufficient likelihood that the serious injury would result from the activity, and (c) that the risks associated with the activity that "violate contemporary standards of decency." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 257 (3d Cir. 2010).

A plaintiff establishes deliberate indifference by showing "that the official acted or failed to act despite his knowledge of a substantial risk of serious harm," *Thomas*, 948 F.3d at 138, which "can be proved indirectly by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001)).

Even when viewing the evidence in a light most favorable to Mr. Miller, his deliberate indifference claim against Defendant Evans fails and there is no genuine issue of material fact. Mr. Miller asserts that Defendant Evans ordered him "to clean the inside of a moving machine with his hands when a safe, alternative tool for completing his job was available." This assertion of a specific order from Defendant Evans to clean the machine in an unsafe manner is directly contradicted by Mr. Miller's own deposition testimony:

> Q [Ms. Box:] Did Mr. Evans specifically tell you to use the rags to clean the chains while the machine was running?
> . . .
>
> A [Mr. Miller:] He told me to clean the machines. He didn't specify belts, nuts and bolts, or nothing like that. I was cleaning all the machines. He said, "Clean the machines. Do what you do, clean the machines."
>
> Q [Ms. Box:] So you chose to clean the machine with the rag while the machine was running?
> . . .
>
> A [Mr. Miller:] I didn't choose to clean the machine, I wasn't given an alternate plan to do anything. . . . So I done what he asked me to do to clean the machines with the rags.

ECF No. 82-3, Plaintiff's Deposition Transcript, at 48:1-7. There is no evidence that Defendant Evans directed Mr. Miller to clean the inside of the towel folding machine while it was running or that Defendant Evans knew Mr. Miller would manually override the safety mechanism that would turn the machine off once the side panel was removed. There is also no evidence to support Mr. Miller's assertion that the only safe way to clean the machine was with an air gun.

Even if Defendant Evans ordered Mr. Miller to clean the machine with a rag and latex gloves, Mr. Miller would not have sustained this injury had he not manually overridden the safety mechanism. The rag was caught in the moving chain, which is what severed his finger. ECF No. 81, ¶ 10. Therefore, Defendant Evans' alleged refusal to provide the air gun tool did not present an objectively serious risk to Mr. Miller's health or safety as required to establish a deliberate indifference claim.

Further, both Defendant Evans and the Laundry Plant Supervisor, Henry Hause, testified there is no reason to clean or repair a machine in the laundry facility while it is running. *See* ECF No. 82-4, Evans' Deposition Transcript, at 116:2-6, 116:8-13, 127:4-6; ECF No. 88-2, Henry Hause Deposition Transcript, at 11:19-25, 12:1 ("There is no repair that I would ever attempt, in any of my experience of being in a shop, working in a shop, working as a foreman, being a supervisor, that nothing has to be done while the machine is operational."). The warning notices on the machine specifically instruct the user to disconnect power before servicing or working on the equipment, with pictures visually demonstrating the risk of fingers getting trapped or injured by moving parts. ECF No. 82, pp. 14-15.

Because there is no evidence demonstrating Defendant Evans had the requisite subjective knowledge that there was an excessive risk to Mr. Miller's health or safety when the incident

occurred, Mr. Miller cannot establish an Eighth Amendment deliberate indifference claim against Defendant Evans.

**B. ADA CLAIM AGAINST DEFENDANT DOC**

The DOC moves for summary judgment on Plaintiff's ADA claim, arguing Mr. Miller failed to properly exhaust his administrative remedies regarding the confiscation of his electric razor under DC-ADM 006. Mr. Miller concedes he has not properly exhausted his ADA claim, as he has not filed a grievance regarding the determination made on his accommodation request form, but requests the claim be dismissed without prejudice as an unexhausted claim. ECF No. 84, p. 20.

The DOC argues, however, that even if this claim were dismissed without prejudice, any grievance Mr. Miller files in relation to the confiscation of his electric razor and denial of his ADA accommodation request would be untimely, because he received the Inmate Disability Accommodations Committee's decision on August 21, 2023. ECF No. 88, pp. 9-10; *see* ECF No. 82-12, at 2; *Williamson v. Wexford Health Sources, Inc.*, 131 Fed.Appx. 888, 890 (3d Cir. 2005) (holding that an inmate is required to present his grievance to the Facility Grievance Coordinator for initial review within fifteen days after the events upon which the grievance is based under DC-ADM 804).

Further, the DOC asserts Mr. Miller's ADA claim fails on the merits. ECF No. 82, pp. 19-21. To establish a claim under Title II of the ADA, Mr. Miller must show: "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Haberle v. Troxell*, 885 F.3d

170, 178-79 (3d Cir. 2018); 42 U.S.C. § 12132. The DOC argues Mr. Miller has failed to establish the third and fourth elements.

There is no evidence in the record that Mr. Miller's electric razor was confiscated based on intentional disability discrimination. All electric razors in the possession of inmates at SCI-Phoenix were confiscated due to institutional security risks. In the prison context, security related policies "are entitled to deference because prison policies concerning security 'are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment.'" *Defreitas v. Montgomery Cnty. Corr. Facility*, 525 F. App'x 170, 179 (3d Cir. 2013) (quoting *Turner v. Safley*, 482 U.S. 78, 86, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

Further, the DOC is accommodating Mr. Miller's disability by allowing him to go to the barber shop weekly for a shave using an electric razor. ECF No. 82, p. 21. Although Mr. Miller's pay is unfortunately docked each time he leaves work to go to the barbershop, and he occasionally cannot access this accommodation on a weekly basis, the DOC is providing a reasonable accommodation while also maintaining the safety and security of its inmates. Therefore, this claim will be dismissed with prejudice due to Mr. Miller's failure to exhaust his administrative remedies, and because it also fails on the merits.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment will be granted, and Mr. Miller's claims will be dismissed with prejudice. A corresponding order accompanies this memorandum.